# UNITED STATES COURT OF APPEALS
## For the Eleventh Circuit

No. 10-13126

District Court Docket No.
4:09-cv-00174-RLV

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
NOVEMBER 9, 2010
JOHN LEY
CLERK

PERRY BETTS,

    Plaintiff - Appellant,

versus

SGE MANAGEMENT, LLC,
SGE ENERGY MANAGEMENT, LTD.,
STREAM SPE LTD.,
STREAM GEORGIA GAS SPE, LLC,
SGE TEXAS SERVICECO, LLC, et al.,

    Defendants - Appellees.

A True Copy - Attested
Clerk U.S. Court of Appeals,
Eleventh Circuit
By: Deputy Clerk
Atlanta, Georgia

Appeal from the United States District Court for the
Northern District of Georgia

## JUDGMENT

It is hereby ordered, adjudged, and decreed that the attached opinion included herein by reference, is entered as the judgment of this Court.

Entered: November 09, 2010
For the Court: John Ley, Clerk of Court
By: Djuanna Clark

ISSUED AS MANDATE
FEB 11 2011
U.S. COURT OF APPEALS
ATLANTA GA

[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

No. 10-13126
Non-Argument Calendar

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
NOVEMBER 9, 2010
JOHN LEY
CLERK

D.C. Docket No. 4:09-cv-00174-RLV

PERRY BETTS,

                    Plaintiff - Appellant,

versus

SGE MANAGEMENT, LLC,
SGE ENERGY MANAGEMENT, LTD.,
STREAM SPE LTD.,
STREAM GEORGIA GAS SPE, LLC,
SGE TEXAS SERVICECO, LLC, et al.,

                    Defendants - Appellees.

Appeal from the United States District Court
for the Northern District of Georgia

(November 9, 2010)

Before BARKETT, MARCUS and KRAVITCH, Circuit Judges.

PER CURIAM:

Perry Betts filed a class-action complaint against Stream Energy; its multi-level-marketing affiliate, Ignite; and a number of Ignite's employees for allegedly running an illegal pyramid scheme in violation of the Racketeer Influenced and Corrupt Organizations Act, 18 U.S.C. § 1962. The defendants moved to dismiss the action for improper venue on the basis of an arbitration clause in Betts's marketing contract with Ignite.[1] *See* Fed. R. Civ. P. 12(b)(3); *Lipcon v. Underwriters at Lloyd's, London*, 148 F.3d 1285, 1290 (11th Cir. 1998). The district court granted the defendants' motion, and Betts has appealed.

Betts argues that the district court erred by dismissing his action in favor of arbitration because the defendants' promise to arbitrate was illusory and therefore unenforceable. We review the enforcement of a contract's arbitration clause *de novo*. *Emp'rs. Ins. of Wausau v. Bright Metal Specialties, Inc.*, 251 F.3d 1316, 1321 (11th Cir. 2001).

Under the Federal Arbitration Act, 9 U.S.C. § 2, an arbitration agreement is valid unless it fails to meet the general contracting requirements of the law governing the agreement. *First Options of Chi., Inc. v. Kaplan*, 514 U.S. 938, 944

---

[1] The parties agreed that the arbitrability of Betts's claims against all the defendants turned on the enforcement of the arbitration agreement in his contract with Ignite. We therefore refer to the contract as an agreement with "the defendants," where appropriate.

2

(1995). Texas law governs the parties' agreement here, so we turn to state-law principles regarding illusory promises in our assessment of Betts's argument.

Texas contracts "must be based upon a valid consideration," or "mutuality of obligation." *Fed. Sign v. Tex. S. Univ.*, 951 S.W.2d 401, 408 (Tex. 1997). "Consideration is a bargained for exchange of promises," *id.*, but an "illusory" promise that fails to bind the promisor cannot sustain a contract, *see In re Palm Harbor Homes, Inc.*, 195 S.W.3d 672, 676–77 (Tex. 2006). In accordance with these general principles, the Texas Supreme Court has "recognized that an arbitration agreement may be illusory if a party can unilaterally avoid the agreement to arbitrate." *Id.* at 677.

Betts argues that a modification clause in his contract would have allowed the defendants to "avoid [their] promise to arbitrate by amending the [arbitration] provision or terminating it altogether." *In re Halliburton Co.*, 80 S.W.3d 566 (Tex. 2002). In support of this argument, Betts notes that the contract's "Policies and Procedures" section gave Ignite the "sole discretion" to modify the agreement and provided that any amendments would become binding "upon notice . . . or publication." By reserving a unilateral right to effect immediate changes to the contract, Betts argues, the defendants reserved an "option to arbitrate" without promising him anything in return.

3

The defendants respond that under the contract's "Terms & Conditions" section, amendments would only "become effective 30 days after publication." During that interim, Betts could accept the changes, by continuing his marketing relationship with Ignite, or reject them, by terminating the agreement. The defendants argue that those restrictions on their ability to modify the contract place it in a class of agreements approved by the Texas Supreme Court in *In re Halliburton*, 80 S.W.3d 566.

*Halliburton* involved an employment arbitration agreement subject to modification at the employer's option. In an attempt to avoid arbitration, an employee argued that the modification provision rendered the employer's promise to arbitrate illusory. But the Court rejected that argument. Given the agreement's notice requirement, the prospective effect of any amendments, and a 10-day delay on the employer's ability to terminate the agreement, the Court concluded that the arbitration agreement was fully enforceable. *Halliburton*, 80 S.W.3d at 569–70.

The defendants here insist that their contract's Terms & Conditions make this case like *Halliburton*: any changes to the arbitration agreement would only become effective after Betts had 30 days to decide whether to accept them. Betts, on the other hand, argues that the contract's Policies and Procedures—with their provision for amendments effective "upon notice"—overrode the Terms &

4

Conditions' purported 30-day notice requirement. The first question before us, then, is which of these provisions governs the parties' relationship.

As it turns out, the contract answers this question for us: "In the event of a conflict between these Policies and Procedures and the [Terms & Conditions], the Policies and Procedures shall be deemed controlling." Accordingly, the next question is whether the defendants' ability to immediately amend or terminate the arbitration agreement made their promise to arbitrate illusory.

We conclude that the answer to that question under Texas law is yes. "[I]f the terms of a promise make performance optional, the promise is illusory and cannot constitute valid consideration." *J.M. Davidson, Inc. v. Webster*, 128 S.W.3d 223, 235 (Tex. 2003). And nothing in Betts's contract would have prevented the defendants from avoiding their promise to arbitrate by modifying the agreement just before filing suit.

Yet an illusory promise does not necessarily make a contract unenforceable. *Halliburton* involved a "stand-alone arbitration agreement[]," for which "binding promises are required on both sides[,] as they are the only consideration rendered to create a contract." *In re AdvancePCS Health L.P.*, 172 S.W.3d 603, 607 (Tex. 2005). "But when an arbitration clause is part of an underlying contract, the rest of the parties' agreement provides the consideration." *Id.*; *accord In re Lyon Fin.*

5

*Servs., Inc.*, 257 S.W.3d 228, 233 (Tex. 2008) ("[A]rbitration clauses generally do not require mutuality of obligation so long as adequate consideration supports the underlying contract."). Betts has not argued that the whole contract here lacked consideration, and we accept his tacit concession. He promised to pay Ignite for training and an opportunity to earn income by marketing Stream Energy's services; this "bargained for exchange of promises" was sufficient to create a binding contract. *Fed. Sign*, 951 S.W.2d at 408.

Under Texas law, as long as an arbitration agreement is "part of a larger contractual relationship," even provisions that create a unilateral "right to opt out of arbitration" cannot undermine "the consideration of the underlying contract or the promises to arbitrate." *Palm Harbor Homes*, 195 S.W.3d at 677. Because the underlying contract containing Betts's promise to arbitrate was supported by adequate consideration, the district court rightly enforced his promise.[2]

**AFFIRMED.**

A True Copy - Attested
Clerk U.S. Court of Appeals,
Eleventh Circuit

By: _____
Deputy Clerk
Atlanta, Georgia

---

[2] Betts's reliance on *Morrison v. Amway Corp.*, 517 F.3d 248 (5th Cir. 2008), is misplaced. For one thing, we are not bound by decisions from other circuits. And to the extent *Morrison* stands for the proposition that illusory promises to arbitrate can invalidate contracts otherwise supported by sufficient consideration, we decline to adopt the Fifth Circuit's logic. For similar reasons—and because we respect the Fifth Circuit's pronouncement that its unpublished decisions "are not precedent," 5th Cir. R. 47.5.4—we are unmoved by the result in *Torres v. S.G.E. Management., L.L.C.*, No. 09-20778 (5th Cir. Oct. 5, 2010) (unpublished).